The Honorable Randy Minton State Representative 880 Minton Road Ward, AR 72176-8618
Dear Representative Minton:
You have requested an Attorney General opinion concerning certain matters involving a municipality contracting for services and materials, and concerning the collection of shut-off fees.
Your questions are based upon various hypothetical scenarios involving municipal contracts. I will restate those scenarios as well as the questions related to each, as follows:
Scenario 1 — A city purchases a metal building from a metal building manufacturer delivered to the building site for a total of $17,500.00 and contracts with a building erector to erect the building for $14,200.00, labor only. All materials are furnished by the city.
Questions:
(1) Would the labor contract need to be bid?
 (2) Would the contractor erecting the building need a commercial contractor's license?
Scenario 2 — A city of the first class is acting as general contractor on a municipal building being built or remodeled. A labor contract is initiated between the city and a contractor or an individual for installation (labor only) of electrical devices including wiring and lights for $15,000.00. The materials ($18,000.00) are purchased separately and furnished by the city.
Questions:
(1) Would the city need to bid either the material or the labor?
 (2) Would the contractor doing the labor need to be a state licensed commercial contractor?
Scenario 3 — A city of the first class is acting as general contractor on a municipal building being build or remodeled and the following occurs: (a) The city contracts for the labor to construct walls in a building with the labor totaling $4,000.00. The city purchases the materials at a cost of $6,200.00. (b) The city contracts with the same entity to hang the sheet rock, again labor only, for $3,000.00. The sheet rock, which costs $5,000.00, is furnished by the city. (c) The city contracts with the same entity to install the grid and tile for suspended ceiling, again labor only, for $8,000.00. The city furnishes the materials at a cost of $9,500.00. The city has entered into three separate contracts with this entity, but the total labor contract does not exceed $20,000.00. When the cost of the materials is considered, however, the total does exceed $20,000.00.
Questions:
(1) Would the contracts need to be bid?
(2) Would the contractor need a state contractor's commercial license?
Scenario 4 — A city of the first class passed an ordinance for water rates imposing a ten percent plus one dollar late charge if the water bill is not paid by the 15th of the month. If the water bill is not paid by the 24th of the month at 2:00 p.m., another $20.00 disconnect/reconnect fee is assessed. Even in situations in which the shutoff of the water has not occurred, the $20.00 fee must be paid if the bill is paid after 2:00 on the 24th of the month.
Questions:
 (1) Is this a reasonable fee since no service has been rendered if the water department has not actually disconnected the water?
 (2) Is there a state statute that addresses the charging of this type of fee by cities of the first class?
RESPONSE
RESPONSE TO QUESTIONS RELATED TO SCENARIO 1.
Question 1 — Would the labor contract need to be bid?
It is my opinion that the labor contract described in Scenario 1 must be bid, unless the city has, by ordinance, provided for the waiver of competitive bidding, pursuant to A.C.A. § 14-58-303(b)(2)(B).[1]
Although the expenditure for this work does not rise to the $20,000.00 threshold that is set forth in A.C.A. § 22-9-203, it nevertheless exceeds the $10,000.00 threshold that is set forth in A.C.A. § 14-58-303. That statute requires bidding on all expenditures exceeding $10,000.00 by a city of the first class.[2] The statute states:
 (a) In a city of the first class, city of the second class or incorporated town, the mayor or his duly authorized representative shall have exclusive power and responsibility to make purchases of all supplies, apparatus, equipment, materials, and other things requisite for public purposes in and for the city and to make all necessary contracts for work or labor to be done or material or other necessary things to be furnished for the benefit of the city, or in carrying out any work or undertaking of a public nature therein.
 (b)(1)(A) The municipal governing body of any city of the first class shall provide, by ordinance, the procedure for making all purchases which do not exceed the sum of ten thousand dollars ($10,000).
 (B) The municipal governing body of any city of the second class or incorporated town may provide, by ordinance, the procedure for making all purchases.
 (2)(A)(i) In a city of the first class, where the amount of expenditure for any purpose or contract exceeds the sum of ten thousand dollars ($10,000), the mayor or his duly authorized representative shall invite competitive bidding thereon by legal advertisement in any local newspaper.
 (ii) Bids received pursuant to the advertisement shall be opened and read on the date set for receiving the bids in the presence of the mayor or his duly authorized representative.
 (iii) The mayor or his duly authorized representative shall have exclusive power to award the bid to the lowest responsible bidder, but may reject any and all bids received.
 (B) The governing body, by ordinance, may waive the requirements of competitive bidding in exceptional situations where this procedure is deemed not feasible or practical.
A.C.A. § 14-58-303 (emphasis added).
The above-emphasized language is clear and unambiguous. It is also broad in its scope, applying to all expenditures (i.e., "expenditure for any purpose or contract") that exceed $10,000.00. The expenditure for the labor contract described in Scenario 1 is to be $17,500.00. It therefore falls squarely within the bidding requirement of A.C.A. §14-58-303(b)(2)(A)(1).
Question 2 — Would the contractor erecting the building need a commercial contractor's license?
It is my opinion that the contractor erecting the building described in Scenario 1 must be licensed by the state Contractors' Licensing Board.[3]
Persons and entities who fall within the definition of "contractor" within the meaning of the contractor licensing statutes must obtain licenses from the board. The contractor licensing statutes define the term "contractor" as follows:
 (a) As used in this chapter, unless the context otherwise requires," contractor" means any person, firm, partnership, copartnership, association, corporation, or other organization, or any combination thereof, who, for a fixed price, commission, fee, or wage, attempts to or submits a bid to construct, or contracts or undertakes to construct, or assumes charge, in a supervisory capacity or otherwise, or manages the construction, erection, alteration, or repair, or has or have constructed, erected, altered, or repaired, under his, their, or its direction, any building, apartment, condominium, highway, sewer, utility, grading, or any other improvement or structure on public or private property for lease, rent, resale, public access, or similar purpose, except single-family residences, when the cost of the work to be done, or done, in the State of Arkansas by the contractor, including, but not limited to, labor and materials, is twenty thousand dollars ($20,000) or more. However, when a person or entity acts as a contractor in the construction, erection, alteration, or repair of his own or its own property, such action shall not result in the person or entity being required to obtain a license, but the person or entity must comply with all other provisions of this subchapter.
 (b) However, the twenty-thousand-dollar ($20,000) exception shall not apply to any project of construction in which any of the construction work necessary to complete the project, except any in-progress change orders, is divided into separate contracts of amounts less than twenty thousand dollars ($20,000), a purpose being to circumvent the provisions of this chapter.
 (c) It is the intention of this definition to include all improvements or structures, excepting only single-family residences.
 (d) Materials purchased by a prime contractor from a third party shall not be considered as part of the subcontractor's project if the prime contractor has the proper classification listed on a current contractor's license for the work being performed by the subcontractor. Materials purchased by a person or entity acting as a contractor in the construction, erection, alteration, or repair of his own or its own property from a third party shall not be considered as a part of the subcontractor's project, provided that the subcontract is for wood framing, shingle roofing, painting, floor covering, or concrete labor.
A.C.A. § 17-25-101 (emphasis added).
Although the above-quoted statute excepts from its definition of "contractor" persons and entities working on projects costing less than $20,000.00, the statute explicitly states that both materials and labor for the project are to be counted in determining the cost of the project. Indeed, the Arkansas Supreme Court has so held. See Brimer v.Arkansas Contractors Licensing, 312 Ark. 401, 849 S.W.2d 948 (1993).
The requirement that both labor and materials costs be considered is also reflected in A.C.A. § 17-25-103.
That statute states in pertinent part:
 (a) Any contractor shall be deemed guilty of a misdemeanor and shall be liable to a fine of not less than one hundred dollars ($100) nor more than two hundred dollars ($200) for each offense, with each day to constitute a separate offense, who:
 (1) For a fixed price, commission, fee, or wage, attempts to or submits a bid or bids to construct or contracts to construct, or undertakes to construct, or assumes charge in a supervisory capacity or otherwise, or manages the construction, erection, alteration, or repair of, or has constructed, erected, altered, or repaired, under his or its direction, any building, apartment, condominium, highway, sewer, utility, grading, or any other improvement or structure, when the cost of the work to be done or done, in the State of Arkansas by the contractor, including, but not limited to, labor and materials, is twenty thousand dollars ($20,000) or more, without first having procured a license with the proper classification to engage in the business of contracting in this state[.]
A.C.A. § 17-25-103(a)(1) (emphasis added).
The only circumstances in which the costs of materials can be excluded in determining the cost of a project are those described in the last sentence of A.C.A. § 17-25-101(d). Again, that provision states:
 Materials purchased by a person or entity acting as a contractor in the construction, erection, alteration, or repair of his own or its own property from a third party shall not be considered as a part of the subcontractor's project, provided that the subcontract is for wood framing, shingle roofing, painting, floor covering, or concrete labor.
A.C.A. § 17-25-101(d) (in part).
Thus, in the context of a project in which a city purchases materials separately for a project involving wood framing, shingle roofing, painting, floor covering, or concrete labor, the cost of the materials could be excluded from a determination of the cost of the project (for purposes of determining whether a contractor's license would be required). Because the project described in Scenario 1 was not a project for one of these types of work, the cost of the materials must be considered in calculating the cost of the project. When all costs described in Scenario 1 are considered, the cost of the project exceeds $20,000.00. Thus the contractor who performs the labor for this project must be licensed by the Contractor's Licensing Board.
RESPONSE TO QUESTIONS RELATED TO SCENARIO 2.
Question 1 — Would the city need to bid either the material or thelabor?
For the reasons stated in response to Question 1 related to Scenario 1, it is my opinion that both the contract for the materials and the contract for the labor in the project described in Scenario 2 must be bid, as required by A.C.A. § 14-58-303, because the cost of each contract exceeds the amount of $10,000.00.
Question 2 — Would the contractor doing the labor need to be a statelicensed commercial contractor?
For the reasons stated in response to Question 2 related to Scenario 1, it is my opinion that the contractor doing the labor in Scenario 2 must be licensed by the state Contractors' Licensing Board, pursuant to A.C.A. § 17-25-101 and -103. The cost of the project, taking into consideration both materials and labor will exceed the $20,000.00 threshold of the contractor licensing statutes.
RESPONSE TO QUESTIONS RELATED TO SCENARIO 3.
Question 1 — Would the contracts need to be bid?
It is my opinion that the labor contracts described in Scenario 3 must be bid. Although none of these contracts individually meets or exceeds the $10,000.00 threshold that must be met before bidding is required under A.C.A. § 14-58-303, it is my opinion that the three contracts should be considered together. When the costs of all three contracts described in Scenario 3 are considered together, the total labor cost for the project exceeds the $10,000.00 threshold requirement of A.C.A. § 14-58-303, and the contracts must therefore be bid. I base my conclusion regarding this matter on the fact that all of these labor contracts are for the same "purpose." The pertinent language of the statute, again, states:
 (2)(A)(i) In a city of the first class, where the amount of expenditure for any purpose or contract exceeds the sum of ten thousand dollars ($10,000), the mayor or his duly authorized representative shall invite competitive bidding thereon by legal advertisement in any local newspaper.
A.C.A. § 14-58-303(2)(A)(i).
In the project described in Scenario 3, all of the labor contracts are for the same "purpose": the remodeling or building of the same municipal building. The cost of these contracts must therefore be considered together.[4] Accordingly, they must be bid.
Question 2 — Would the contractor need a state contractor's commerciallicense?
It is my opinion that the contractor who is hired to do the labor for the three contracts described in Scenario 3 must be licensed by the state Contractors' Licensing Board. These three contracts are related to the same project, and the total cost of materials and labor for the three contracts will exceed the $20,000.00 threshold. Thus, under the provisions of A.C.A. § 17-25-101, a license is required. (For more in-depth discussion of this issue, see response to Question 2 related to Scenario 1, above.)
I note that because these contracts relate to the same project, they must be considered together in determining whether the $20,000.00 threshold has been met. The applicable contractor licensing statute explicitly states that a project cannot be divided into separate contracts for work necessary to the project, for the purpose of circumventing the licensing requirements.
More specifically, the statute states:
 (b) However, the twenty-thousand-dollar ($20,000) exception shall not apply to any project of construction in which any of the construction work necessary to complete the project, except any in-progress change orders, is divided into separate contracts of amounts less than twenty thousand dollars ($20,000), a purpose being to circumvent the provisions of this chapter.
A.C.A. § 17-25-101(b).
RESPONSE TO QUESTIONS RELATED TO SCENARIO 4.
Question 1 — Is this a reasonable fee since no service has been renderedif the water department has not actually disconnected the water?
I am unable to opine as to the reasonableness of the reconnection fee that is described in Scenario 4. State law does not address this type of fee. It merely delegates to cities the authority to establish rates for water service, see A.C.A. § 14-234-214, and does not differentiate between types of fees that are imposed for the various aspects of service. Because this fee is not a matter of state law, an evaluation of it must entail an evaluation of the ordinance by which it was enacted. An evaluation of this nature is generally outside the scope of the Attorney General's authority. In addition, the reasonableness of any fee may depend upon the factual and legal circumstances under which it is imposed. These circumstances would not only include the events leading up to the imposition of the fee against a particular citizen, but would also include any contractual provisions to which the citizen agreed. All of these matters will bear upon an evaluation of the overall reasonableness of the fee that is described in Scenario 4. An ultimate determination of the reasonableness of a fee of this nature must be based upon a consideration of these matters, and can only be definitively made by a qualified fact finder, such as a court. See Ops. Att'y Gen. Nos. 99-068; 87-452.
Question 2 — Is there a state statute that addresses the charging of thistype of fee by cities of the first class?
As indicated in response to Question 1 above, state law does not address the type of fee that is described in Scenario 4. Rather, state law simply delegates to cities the authority to establish rates for water service. A.C.A. § 14-234-214. State law does not differentiate between the types of fees that are imposed for the various aspects of water service.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
[1] A.C.A. § 14-58-303(b)(2)(B) states: "The governing body, by ordinance, may waive the requirements of competitive bidding in exceptional situations where this procedure is deemed not feasible or practical." For purposes of this opinion, I will assume that in each of the hypothetical scenarios, no such waiver has been enacted in the city in question. This assumption will apply to my responses to all questions herein.
[2] I am assuming that this question relates to a city of the first class, because most of your other questions specify that they relate to a city of the first class, and because you have not specified otherwise in this question. Nevertheless, I note that if this question does relate to a municipality other than a city of the first class, the answer would be governed by the provisions of that municipality's ordinances concerning expenditures, pursuant to A.C.A. § 14-58-303(b)(1)(B).
[3] I note that the contractors' license discussed in this opinion is a "commercial" license, as opposed to a "residential" license. Residential licenses are governed by A.C.A. § 17-25-501 et seq.
[4] Although Scenario 3 does not require me to analyze the issue of whether the cost of materials should also be considered, there is case precedent from other jurisdictions indicating that the consideration of such costs might be appropriate as well. For a discussion of this issue, see Op. Att'y Gen. No. 91-057.